# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **SURIYA H. SMILEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 C 6183** |
| | ) | |
| **COLUMBIA COLLEGE CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Columbia College Chicago's (Columbia) motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment.

## BACKGROUND

Plaintiff Suriya H. Smiley (Smiley) alleges that she is of Palestinian national origin and Arab ancestry, who allegedly worked for Columbia as a part-time faculty member in the Radio Department for 14 years. In December 2008, Stephanie Downs (Downs), the Assistant Director of Student Affairs, allegedly notified Smiley that a student (Complaining Student) had made a written complaint about Smiley (Student

Complaint). Smiley claims that she met with Downs and that although Downs questioned Smiley about the complaint, Downs refused to provide Smiley with the details of the Student Complaint. Smiley then allegedly received a notification from Department Chair Barbara Calabrese (Calabrese) informing Smiley that she was found in violation of the charges brought against her. On January 16, 2009, Smiley allegedly met with Assistant Provost Louise Love (Love) and Calabrese, and they informed Smiley that she had been accused of making anti-Semitic remarks. Smiley contends that at the meeting, she denied the allegations made against her. At the conclusion of the meeting, Love and Calabrese allegedly indicated that they would conduct an investigation, but on the next day, Love allegedly sent Smiley a letter informing her that her employment was terminated. Smiley contends that she was not properly apprised of Columbia's Anti-Discrimination and Harassment policy that she allegedly violated. Smiley also claims that other students confirmed that Smiley never made the alleged anti-Semitic remarks and that Columbia's reason for her termination was a pretext in order to discriminate against Smiley because of her national origin and race.

Smiley includes in her complaint a claim for national origin discrimination brought pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq*. (Count I), a Title VII race discrimination claim (Count II), and a claim

for race discrimination brought pursuant to 42 U.S.C. § 1981 (Section 1981) (Count III).  Columbia moves for summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009).  In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).  This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."  *Id.* at 325.  Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A "genuine issue" in the context of a motion for summary judgment is not simply a

"metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

A plaintiff bringing a Title VII claim can defeat a defendant's motion for summary judgment under the direct method of proof or the indirect method of proof. *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009). At the summary judgment stage, courts generally apply the same analysis to Section 1981 claims that is applied to Title VII claims. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007)(stating that courts "generally have applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981"); *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 641 n.5 (7th

Cir. 2006)(stating that "both Title VII and § 1981 employ the same analysis").

I.  Direct Method of Proof

Columbia contends that Smiley cannot defeat the instant motion under the direct method of proof.  In order to defeat a defendant's summary judgment motion under the direct method of proof, a plaintiff must show through direct or circumstantial evidence that there are "'triable issues as to whether discrimination motivated the adverse employment action.'"  *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009)(quoting *Nagle v. Vill. of Calumet Park,* 554 F.3d 1106, 1114 (7th Cir. 2009)(citation omitted); *see also Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009)(stating that "[a] plaintiff may also prevail 'by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker")(internal quotations omitted).

In the instant action, Columbia has shown that it acted based on the Student Complaint, which charged Smiley with making anti-Semitic remarks, engaging in potentially sexually harassing conduct, and humiliating the Complaining Student.  Smiley has not pointed to direct evidence of unlawful discrimination.  She has not pointed to sufficient evidence to show that there are triable issues as to whether discrimination motivated the termination of her employment.  Smiley has also failed

to point to sufficient circumstantial evidence to create a convincing mosaic of evidence that indicates unlawful discrimination. Thus, Smiley cannot proceed under the direct method of proof.

## II. Indirect Method of Proof

Columbia also contends that Smiley cannot defeat the instant motion under the indirect method of proof. Under the indirect method of proof, a plaintiff must first make out a *prima facie* case by establishing that "(1) she is a member of a protected class, (2) she met her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of the protected class received more favorable treatment." *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010)(citing *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008)). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to present a legitimate non-discriminatory reason for the adverse employment action. *Id.* If the employer offers such an explanation, the burden shifts to the plaintiff to show that the given reason was a pretext for unlawful discrimination. *Id.*

A.  *Prima Facie* Case

In regard to the *prima facie* case, it is not disputed that Smiley belongs to a protected class and suffered a material adverse employment action when her employment was terminated.  Columbia contends, however, that Smiley was not meeting her employer's legitimate non-discriminatory expectations and that Smiley has not pointed to a similarly-situated employee outside the protected class that was treated more favorably.

1.  Whether Smiley Was Meeting Columbia's Legitimate Expectations

Columbia contends that the evidence shows that Smiley was not meeting her employer's legitimate non-discriminatory expectations.  Columbia points out that the Student Complaint indicates that Smiley made anti-Semitic remarks and engaged in conduct that could constitute sexual harassment.  Columbia also points out that the Student Complaint indicates that Smiley humiliated the Complaining Student in class.  Smiley has vehemently contested the facts alleged by the Complaining Student and contends that she did not do anything wrong at work.  Smiley contends that she had a work history with Columbia without any disciplinary violations and was unjustly accused by the Complaining Student.

Columbia has presented evidence that shows that one aspect of Smiley's

performance that Love found unacceptable was Smiley's references during classes to her ethnicity and to the ethnicity of her students. (Love dep. 27). Smiley acknowledges that she embarrassed the Complaining Student during class. (Ans. SJ 9). In fact, under Smiley's own version of events, she contends that the Complaining Student was motivated to complain about her because the Student was embarrassed in class by a question by Smiley regarding the Complaining Student's lack of knowledge of the name of a specific musician. (Ans. SJ 9); (SAF Par. 58-61). Smiley also acknowledges that on one occasion after questioning the Complaining Student in class and after she had "goofed around with him," Smiley "knew that [the Complaining Student] was upset." (SAF Par. 51); (Smil. dep. 44, 46, 63, 68-69). Smiley admits that the Complaining Student then "grabbed his possessions and bolted out of the classroom." (SAF Par. 51); (Smil. dep. 44, 46, 63, 68-69). Smiley acknowledges that her teaching style involved "goof[ing] around" with the students, which involved "making comments in jest about the students' view[s] . . . ." (SAF Par. 53); (Sm. dep. 45, 63). In addition to the allegations of racist comments and potentially harassing behavior by Smiley, it was not unreasonable for Columbia to expect that Smiley would teach her classes without humiliating her students and causing the distress to her students that she appeared to have caused the Complaining Student.

Columbia has presented evidence showing that Love, while interviewing Smiley, learned that Smiley commonly joked around with students such as the Complaining Student while teaching. (Love Aff. Par. 12); (Love dep. 34). Love states in her affidavit that, based on the interview with Smiley, she believed that Smiley "did not observe professional decorum and did not understand the boundaries between faculty and student," and that Smiley "created a false intimacy through joking. . . ." (Love Aff Par. 12); (Love dep. 34-35). Smiley contends that she was merely joking around with the Complaining Student. Whether or not it was fair or wise for Columbia to find fault with such conduct is not dispositive. This court does not sit as a superpersonnel office to judge the wisdom of an employer's every decision. *See Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010)(stating that "courts are not 'superpersonnel department[s]' charged with determining best business practices")(quoting in part *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)). It is sufficient that the evidence shows that Smiley, by embarrassing her students and not observing professional decorum and boundaries, as viewed by Columbia, was not meeting Columbia's legitimate expectations. Thus, Smiley cannot defeat Columbia's motion for summary judgment under the indirect method of proof since she has failed to show that she was meeting Columbia's legitimate job expectations. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir.

2008)(stating that a plaintiff proceeding under the indirect method of proof must "establishes all four elements of her prima facie case").

### 2. Similarly-Situated Employees

Columbia contends that Smiley has also failed to point to similarly-situated employees outside the protected class that were treated more favorably. When a plaintiff is complaining about discrimination in the form of discipline for workplace rule violations, "similarly situated employees must be 'directly comparable' to the plaintiff 'in all material respects,'. . . which includes showing that coworkers engaged in comparable rule or policy violations." *See Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009); *see also Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)(stating that for the similarly-situated requirement based on alleged discriminatory discipline, a plaintiff generally must show "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them"). Smiley has pointed to five other instances where instructors at Columbia were accused of violating the Anti-Discrimination and Harassment policy (Policy), which Smiley contends show that similarly-situated employees outside the

protected class were treated more favorably.  (Ans. SJ 7); (SAF Par. 76-80).

### a.  Instructor 1

Smiley contends that "Instructor 1" (Instructor 1) was accused of violating the Policy.  (SAF Par. 76).  However, Columbia has pointed to evidence uncontradicted by Smiley that shows that Department Chair, Bob Thall, was the decision-maker in regard to the accusations against Instructor 1.  (P. Ex. V 6).  Thus, since different decision-makers were involved in Smiley's case and Instructor 1's case, Smiley and Instructor 1 are not similarly situated.

### b.  Instructor 2

Smiley contends that "Instructor 2" (Instructor 2) was accused of violating the Policy.  (SAF Par. 77).  However, Columbia has presented uncontroverted evidence that shows that, after the investigation, Instructor 2 was no longer requested to teach classes at Columbia.  (P. Ex. V 3).  Smiley also contends that, during the investigation of Instructor 2, Columbia interviewed students in addition to the student making the complaint.  However, there has been no showing by Smiley that such interviews were required under any rule.  Also, unlike in the instant action, the evidence shows that the other students who were interviewed were also victims of

the alleged harassing behavior.  (P. Ex. W).  Merely because the investigation of

Instructor 2 and Smiley were not conducted in the exact same fashion is not

sufficient to show that Instructor 2 was treated more favorably than Smiley.


### c.  Instructor 3

Smiley contends that "Instructor 3" (Instructor 3) was accused of violating the

Policy.  (SAF Par. 78).  Columbia has presented undisputed evidence that shows that,

after the investigation, Instructor 3 was no longer requested to teach classes at

Columbia.  (P Ex. V 3).  Columbia has also presented undisputed evidence that

shows that the investigation of Instructor 3 only involved interviews of the

complaining student and the faculty.  (P. Ex. X).  Thus, Smiley has not shown that

Instructor 3 was treated more favorably than her.


### d.  Instructor 4

Smiley contends that "Instructor 4" (Instructor 4) was accused of violating the

Policy.  (SAF Par. 79).  Columbia has introduced evidence that shows that Instructor

4 was accused of one specific misconduct and was not accused of race-based

harassment, which was the main complaint against Smiley.  (P. Ex. Y).  Thus, the

alleged violations are not comparable.  In addition, although there was evidence that

in regard to the investigation of Instructor 4, some former students were interviewed, there is no evidence that the investigation involved interviews of current students who were witnesses of the alleged misconduct. (P. Ex. Y). Thus, Smiley has not shown that Instructor 4's situation was comparable to her situation or that Instructor 4 was treated more favorably.

### e.  Instructor 5

Smiley contends that "Instructor 5" (Instructor 5) was accused of violating the Policy. (SAF Par. 80). Columbia has introduced evidence that shows that Instructor 5 was accused of one specific misconduct and was not accused of race-based harassment, which was the main complaint against Smiley. (P. Ex. Z). In addition, Columbia has introduced evidence that shows that the alleged misconduct by Instructor 5 occurred outside the classroom and outside the school grounds. (P. Ex. Z). Thus, the misconduct at issue in regard to Instructor 5 was entirely different from the alleged misconduct by Smiley in her classroom while teaching. Thus, Smiley has not shown that any of the above-referenced instructors were similarly-situated employees outside the protected class that were treated more favorably.

We recognize that "[t]he similarly situated inquiry is a flexible, common-sense comparison based on 'substantial similarity' rather than a strict 'one-to-one mapping

between employees . . . ." *Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008). However, the similarly-situated requirement "still requires 'enough common features between the individuals to allow [for] a meaningful comparison.'" *Id.* (quoting in part *Humphries v. CBOCS W., Inc.,* 474 F.3d 387, 405 (7th Cir. 2007)). Smiley has not met her burden concerning the similarly-situated employee requirement in this action. Thus, based on the above, Smiley has failed to point to a similarly-situated employee outside the protected class that was treated more favorably. Thus, Smiley cannot defeat Columbia's motion for summary judgment under the indirect method of proof since she has failed to show that a similarly-situated employee outside the protected class was treated more favorably. *See Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 828 (7th Cir. 2008)(stating that a plaintiff's failure to point to an employee that meets the similarly-situated requirement "dooms his discrimination claim").

### B. Legitimate Reason and Lack of Pretext

Columbia also argues that, even if Smiley could establish a *prima facie* case, Columbia has a legitimate non-discriminatory reason for terminating Smiley's employment. The undisputed facts indicate that Columbia received the Student Complaint about Smiley's alleged misconduct at work. Columbia contends that it

terminated Smiley's employment due to the Student Complaint.  Such a reason, on

its face, is a legitimate non-discriminatory reason for the termination of Smiley's

employment.  Smiley contends that the given reason is a pretext.

### 1.  Prior Employment of Love

Smiley contends that Love made certain decisions in 2005, in the context of

prior employment, that show an animus against Palestinians and show that the reason

given by Columbia for Smiley's termination is a pretext.  (Ans. SJ 12).  However,

Smiley has provided nothing more than unsubstantiated general facts about Love's

prior employment.  Smiley has not shown that any such evidence would even be

admissible in this action.  *See, e.g., Berry v. Chicago Transit Authority*, 618 F.3d

688, 690-91 (7th Cir. 2010)(explaining that a summary judgment motion "should be

granted when the *admissible evidence*, construed in favor of the non-movant, reveals

no genuine issue as to any material facts and establishes that the movant is entitled to

judgment as a matter of law")(emphasis added); *United States v. 5443 Suffield

Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010)(stating that summary

judgment may only be defeated by pointing to admissible evidence in the summary

judgment record that creates a genuine issue of material fact").  Nor has Smiley

pointed to sufficient evidence concerning Love's prior employment that would

indicate any such animus on the part of Love.

### 2.  Statement by Calabrese

Smiley also claims that a statement made by Calabrese is evidence that Calabrese wanted to see Smiley's employment terminated.  Smiley claims that Calabrese told Smiley "I'm not here for you.  I'm here for the students."  (Ans. SJ 12).  However, such a statement in no way indicates an animus towards Smiley because of her race or national origin.  The statement clearly indicates that the welfare of the students is the top priority for Calabrese, which in no way indicates an intention by Calabrese to unlawfully discriminate against Smiley.

### 3.  Steps of Investigation

Smiley contends that further steps could have been taken to assess the veracity of the complaint.  Columbia contends that it took several steps in an organized manner to investigate the Student Complaint, which shows that its ultimate decision was not a mere pretext.  The undisputed evidence shows that Calabrese met with the Complaining Student who indicated a desire to make a formal complaint.  (R SF Par. 9-12); (Cal. dep. 47).  Smiley disputes that the Complaining Student desired to make a formal complaint and points to the memorandum prepared by Downs, indicating

that the Complaining Student believed the issue was resolved since he was removed from the class. However, even if that were true, that fact in no way contradicts Calabrese's assertion that the Complaining Student told her he wanted to make a formal complaint. Further, it is undisputed that the investigation was referred to the Dean of Students' Office and an investigation was conduced by Downs. (R SF Par. 12-13). The undisputed facts show that Downs interviewed the student and prepared a memorandum summarizing the interview. (R SF Par. 19). It is also undisputed that Downs interviewed Smiley and prepared a memorandum summarizing the interview. (R SF Par. 22). In addition, it is undisputed that after Downs concluded that Smiley had violated the Policy, Downs prepared a summary of her findings and the matter was referred to Love. (R SF Par. 26, 29). It is undisputed that Love had never met Smiley or heard of her prior to the referral of the investigation of Smiley. (R SF Par. 30). Finally, it is undisputed that after being referred the investigation of Smiley, Love met with Smiley and ultimately decided that Smiley would no longer be asked to teach classes at Columbia. (R SF Par. 31-35). The undisputed facts indicate that Columbia was presented with a written statement by the Complaining Student and the Complaining Student orally confirmed the allegations against Smiley and indicated a desire to make a formal complaint. The undisputed facts also indicate that Columbia engaged in a series of steps during the investigation of Smiley

culminating in a final decision by a decision-maker who had never met or heard of Smiley. The mere fact that Columbia did not conduct the investigation in the manner advocated by Smiley or in the exact same manner as in prior investigations is not sufficient to indicate that the reason given by Columbia for Smiley's termination was a lie. Smiley also contends that there were irregularities in regard to the reasons given during the investigation and in regard to the timing of when Smiley was fully informed of the charges against her. However, Smiley has not pointed to any irregularities that would be sufficient to indicate that the given reason for her termination was a pretext.

### 4. Interview of Other Students

Smiley contends that the investigation of the Student Complaint should have included interviews of other students in the Complaining Student's class. Smiley asserts that such interviews of witnesses were required under Columbia's policies, citing to Paragraphs 44 through 46 of the statement of additional facts, (Ans. SJ 7), and to the deposition of Sharon Wilson-Taylor (Wilson-Taylor). (SAF Par. 46). Wilson-Taylor, however, did not testify that there was any such requirement to interview witnesses. Wilson-Taylor indicated that there was no set procedure "that required an investigator to contact witnesses to alleged discriminatory conduct."

(Wil-Tay dep. 20). Although Wilson-Taylor agreed that students that witnessed an incident could be interviewed, she did not indicate that such steps were required. (Wil-Tay dep. 20). Smiley has not pointed to any rule at Columbia that required such interviews. Thus, Smiley has not shown that the fact that Columbia did not interview other students during the investigation of Smiley violated any of Columbia's rules or policies.

### 5. Reasons Given by Love

Smiley points to certain statements regarding the reasons for Smiley's termination made by Love during her deposition that Smiley contends are contrary to other statements made in Love's affidavit. (Ans. SJ 10). Smiley claims that Love contended at her deposition that Smiley violated the Policy because of her lack of professional decorum and then Love changed her reason in her affidavit to be that Smiley violated the Policy because she made references to the ethnicity of herself and students. (Ans. SJ 10). While Love did indicate during her deposition why she believed that Smiley lacked professional decorum, Love also indicated that Smiley had acknowledged to Love that Smiley made references to her ethnicity while teaching the class. (Love dep. 36). Love explained during her deposition how she learned of Smiley's practice of joking around with students. (Love dep. 34-36). The

Student Complaint that was provided to Love indicated that Smiley was possibly joking around when referencing the ethnicity of the Complaining Student. (R SF Par. 9). Thus, the statements included in Love's affidavit are not contrary to her deposition testimony.

Smiley also contends that the reason given for the termination of Smiley's employment was a pretext because Love admitted during her deposition that Smiley did not make any admission during her interview with Love that led Love to believe that Smiley was anti-Semitic. (Ans. SJ 10). However, simply because Smiley denied the allegations included in the written Student Complaint does not mean that Love's ultimate determination was a pretext.


6. Wisdom of Decision

Smiley criticizes the wisdom of Columbia in concluding that Smiley had violated the Policy and acted improperly while teaching and the decision to terminate Smiley's employment. However, in order to meet the pretext requirement, a plaintiff must show "more than just faulty reasoning or mistaken judgment on the part of the employer." *Scruggs*, 587 F.3d at 838 (internal quotations omitted). The plaintiff must show that the given reason is a "lie, specifically a phony reason for some action." *Id.* (internal quotations omitted); *see also Ellis*, 523 F.3d at 828 (stating that

"[e]vidence that an employer made a mistake or that the decision was ill-advised cannot meet this burden; an employer's explanation is a pretext for discrimination only if it is a lie").  Although Smiley denies making any racist comments or engaging in harassing behavior, whether or not she actually did engage in unlawful conduct or whether she holds racist beliefs is not dispositive for the pretext analysis.  The key issue is whether there was sufficient evidence that indicates that Columbia could have reasonably concluded, based on the evidence, that Smiley engaged in improper conduct and whether there is evidence of a hidden animus held by decision-makers.

Is it undisputed that the Complaining Student submitted a written complaint against Smiley.  The Complaining Student accused Smiley of inquiring whether he was Jewish and informing him that she is "an Arab."  (R SF Par. 9).  The Complaining Student also alleged that Smiley repeatedly referred to his Jewish heritage while making general statements about Jews and made some references in a manner that the student believed to be derogatory.  (R SF Par. 9).  For example, the Complaining Student claims that Smiley told him that she could tell that he was Jewish based, in part, on the appearance of his nose.  (R SF Par. 9).  The Complaining Student further contends that when he left the classroom, he overheard Smiley talking about the Complaining Student and saying that he "sucked on the radio."  (R SF Par. 9).  The Complaining Student further contends that Smiley "tells

everyone her life story, and laughs at people behind their backs." (R SF Par. 9). The Complaining Student further states that he chose Columbia because of its fine reputation and its "diversity" and that he did not "expect to be denigrated and humiliated by a teacher." (R SF Par. 9). Thus, Columbia was presented with serious allegations of misconduct in writing by a student, which could reasonably support a decision to terminate Smiley's employment. Although Smiley argues that the ultimate determinations by Columbia regarding Smiley were wrong, this court is not a proper forum to litigate the general fairness of Columbia's decision to terminate Smiley's employment.

Smiley also testified during her deposition that she believes that someone wrote the Student Complaint for the Complaining Student and that whoever wrote the letter was a racist and held an animus against Smiley because of her ethnicity. (Smil. dep. 79-80). However, Smiley fails to point to any evidence showing that anyone involved in the investigation of Smiley had any information indicating that the Student Complaint was motivated by a hidden animus or written by someone else. Smiley also asserts that the Student Complaint appears to have been prepared by someone with writing skills above those of the Complaining Student. (Ans. 9-10). However, Smiley has not provided sufficient evidence to show that the Student Complaint exhibited a writing skill beyond that of the Complaining Student. Nor has

Smiley pointed to evidence that shows that anyone involved in the investigation of

Smiley had sufficient knowledge of the Complaining Student's writing ability that it

would have been evident to those involved in the investigation that the Student

Complaint was written by someone else.  Thus, Smiley's speculation that the Student

Complaint was written by someone other than the Complaining Student and that

there was a hidden motive behind the Student Complaint is irrelevant to the pretext

analysis.  Although Smiley disputes the wisdom of the findings made by Columbia

against her, such matters are not dispositive in regard to the pretext analysis.  As

discussed above, the Seventh Circuit has indicated that a court does "not sit as a

superpersonnel department that reexamines an entity's business decision and reviews

the propriety of that decision," and that the "only concern is whether the legitimate

reason provided by the employer is in fact" a true one.  *Holmes v. Potter*, 384 F.3d

356, 361-62 (7th Cir. 2004)(internal quotations omitted)(quoting *Stewart v.

Henderson,* 207 F.3d 374, 378 (7th Cir. 2000)).  Smiley has not shown that the

determination by Columbia that she violated the Policy was so unreasonable and

unwise as to indicate a pretext.  *See, e.g., Vukadinovich v. Board of School Trustees

of North Newton School Corp.*, 278 F.3d 693, 700 (7th Cir. 2002)(indicating a

plaintiff can "show pretext indirectly, by showing that the defendants' proffered

justifications were not worthy of credence").   This court is not an appropriate forum

to review the merits of the investigation and findings concerning Smiley. *Stockwell*, 597 F.3d at 902.

The undisputed evidence shows that Love and Downs believed that Smiley violated the Policy and Smiley has not pointed to sufficient evidence to indicate that they held a hidden contrary animus. Smiley also admits that neither Love or Calabrese ever said any derogatory or anti-Arabic words to Smiley, and Smiley has not pointed to any specific derogatory statements made by any employees at Columbia. (R SF Par. 37); (Smil. dep 93-95). Smiley cannot proceed to trial based on her pure speculation that some hidden animus was behind the decision to terminate her employment. Nor can Smiley proceed to trial to challenge the wisdom of Columbia's investigation of Smiley and its findings. *Williams v. Airborne Exp., Inc.*, 521 F.3d 765, 768 (7th Cir. 2008)(stating that "even if [the plaintiff] had made out a prima facie case, he did not offer evidence to show that [the defendant's] stated reason for firing him was a pretext for discrimination" and that although the plaintiff "recite[d] a bevy of reasons why he believe[d] [the defendant's] stated rationale [wa]s not true, . . . none of them could establish that [the defendant's] reason was a lie"). After considering all of the evidence in its totality, Smiley has failed to point to sufficient evidence to show that Columbia's given reason for terminating her employment was a pretext. Therefore, based on the above, we grant Columbia's

motion for summary judgment.

## CONCLUSION

Based on the foregoing analysis, we grant Columbia's motion for summary

judgment.

_Samuel Der-Yeghiayan_
Samuel Der-Yeghiayan
United States District Court Judge


Dated:   November 2, 2010